**NESBITT, INC., Plaintiff-Appellant v MASSACHUSETTS BONDING & INSURANCE CO., et, Defendants-Appellees.**

Ohio Appeals, 8th District, Cuyahoga County.

No. 18881. Decided December 28, 1942.

M. S. Farmer, Cleveland, for plaintiff-appellant.

S. L. Heckman, Cleveland, and Frank Dowling, Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

In 1933 the Board of Education of the School District of Norwalk, Ohio, decided to erect a new high school building. On application, the Public Works Administration of the United States granted the Board $126,000.00 which was substantially 45% of the cost of the building. The voters of Norwalk, Ohio, approved a bond issue of $148,500.00, sufficient to meet the remainder of the cost of the building. Bids were called for and E. M. Withers, d.b.a., The Withers Company, was awarded the "plumbing, heating and ventilating." The plaintiff was a sub-contractor who agreed to furnish to Withers, the contractor, certain materials known as "Thermovents" at an agreed price. It is not denied that these materials were actually installed in the building by the plaintiff and that Withers owes him $821.00 therefor.

As provided by §2365-1 et al, GC E. M. Withers, as principal, and defendant, The Massachusetts Bonding & Insurance Company of Boston, as surety, executed the required contractor's bond.

**Section 2365-3 GC** provides that any person to whom any money shall be due on account of having performed any labor or furnished any materials in the construction of a building such as the Norwalk High School, shall furnish the surety "a statement of the amount due to such person, firm or corporation" but such statement must be furnished to the surety "not later than ninety days after the acceptance of such building, work or improvements by the duly authorized Board or Officer."

The plaintiff on September 6, 1940, to comply with §2365-3 **GC**, furnished to the defendant bonding company, an itemized statement of labor and materials furnished by plaintiff on its subcontract. The defendant in its answer alleges that "the Board of Education of Norwalk, Ohio, accepted the contract of E. M. Withers Company on May 24, 1940" which was more than ninety days before the plaintiff furnished it with the said statement. At the be-

ginning of the trial the parties stipulated that "the sole issue to be determined in this law suit is, therefore, whether or not the Board of Education of the City of Norwalk School District met and accepted the public improvement installed by the defendant, Ernest M. Withers, as contemplated by §2365-3 GC, on the 24th day of May, 1940."

The case was submitted to a jury which found for the defendants.

Only one witness, called by the plaintiff and the defendants, testified in the case, namely, Arthur C. Elmer, the Clerk of the Board who was also a member. His evidence, together with the exhibits and the court's charge to the jury constitutes the entire record in the case.

The facts of the case as testified to by Mr. Elmer are as follows:

On May 24, 1940, the general contractor, The L. M. Leonard Company, had completed its contract. There were ten other contractors. Two of them, The Withers Company having the contract for the plumbing, heating and ventilating, and The E. C. Reitz Company having the contract for the electrical work, had not completed their contracts. The general contractor was anxious to get his money and on May 24, 1940, he met with the architect of the building and the resident engineer of the P. W. A. at the high school building under construction. All of the members of the Board of Education were called by telephone and they and the said three persons met at the building.

In order that the general contractor should be paid promptly, it was necessary to secure from P. W. A. the balance of its grant amounting to $26,000.00. A form of certificate prepared by P. W. A. was submitted to the members of the Board by the resident engineer of P. W. A. with the statement that it would be necessary under P. W. A. regulations to have such a certificate signed before the P. W. A. would proceed to make an audit of the Project and pay the balance of $26,000.00.

Mr. Elmer, the Clerk of the Board, further testified that on May 24, 1940, "we went through the building and the building was substantially completed at that time, except for work the Withers Company and the Reitz Company were doing at that time."

The form of acceptance submitted by the resident engineer of P. W. A. was altered before it was signed by the members of the Board. The certificate as signed which is defendant's exhibit 1, contains a proviso not included in the form of acceptance submitted by the representative of P. W. A. The acceptance as signed by the five members of the Board is as follows:

"THIS IS TO CERTIFY that in compliance with the approved plans and specifications, and other contract documents for the construction of a school building, P. W. A. Docket No. OH-1808 F, in the City of Norwalk, County of Huron and State of Ohio, co-partnerships, corporations or individuals as follows:

(then follow the names of the 11 contractors including the Withers Company.)

"Said co-partnerships, corporations or individuals being hereinafter designated as 'contractors' have furnished materials and constructed said school building which, on the part of said contractors, was to be furnished and constructed, under their contracts with the Board of Education of the City of Norwalk, Ohio, and that all of said work is accepted, provided, however, that the issuance of this certificate shall not be taken or construed as relieving said contractors of their agreements expressed in their said contracts to remedy such defects, if any, in material or workmanship, as may appear within the periods stated in said contracts, or as relieving said contractors of any other responsibility or contractual obligations which, in accordance with the true intent and meaning of said contracts, should remain in force and effect after the issuance of the certificate of completion and acceptance.

THIS IS TO FURTHER CERTIFY that all of the work contemplated by said Project P. W. A. Docket No. OH-1808 F, has been completed and is accepted.

Dated this 24th day of May, 1940, at Norwalk, Huron County, Ohio.

    Norman B. Furlong, President
    Mildred M. Laning, Vice-President
    Arthur C. Elmer, Clerk, Mem.
                Ray Gandolf, Member of Board
                Tracy M. Patrick, Member of Board."

Mr. Elmer further testified that the words in the said certificate, beginning with "provided however, * * *" and to the end of the paragraph, were not found in the original certificate submitted by P. W. A., and were added at the request and insistance of the members of the Board.

A question directed to the Clerk by the attorney for the plaintiff, as to the reasons for the Board insisting on the additional provision was held incompetent by the trial judge as violating the parol evidence rule. We have no fault to find with this ruling. An examination, however, of the clause added by the Board discloses the reasons for its inclusion.

The evidence is uncontradicted that neither the Withers Company nor the Reitz Company had completed their contracts on

May 24, 1940. The Withers Company kept five men on the job until June 20th and even then, the record discloses that Withers had not completed his contract according to its terms and the plans and specifications. The Board, while wishing to secure promptly the balance due from P. W. A., was unwilling to sign any certificate which might be construed as relieving the said two contractors from their contractual obligations to complete their respetive contracts and so the Board had inserted in the certificate the provision that the certificate would not have the effect of "relieving said contractors of any other responsibility or contractual obligation * * * *." This interpretation of the certificate is confirmed by the evidence given by the clerk on his cross-examination by the defendant. On cross-examination he testified that on May 24, 1940, Mr. Agnew, the P. W. A. resident engineer "knew that the building was incomplete at the time by a couple of contractors (i.e., the Withers Company and the Reitz Company) and we refused to sign his regular P. W. A. form without this conditional provision in there, that the contractors were not relieved of any of their contractual obligations and that anything which was not finished would have to be finished * * *."

In fact, this construction later was placed upon this certificate by the Board of Education and the defendant Bonding Company. The record discloses that on July 10, 1941, the Board made a settlement with the defendant Bonding Company of the Withers Company contract by which the Board retained $400.00 of the amount due the Withers Company under its contract, which amount, according to the undisputed evidence, included the failure of the Withers Company to complete its contract according to plans and specifications.

If the defendant on July 10, 1941, when it made its settlement with the Board, had considered the certificate of May 24, 1940, to have been an acceptance by the Board of the entire building, and of complete performance by every contractor, including the Withers Company, it is obvious that the defendant would not, on July 10, 1941, in a settlement, have allowed as a deduction from the full contract price due the Withers Company any amount for its failure to complete its contract according to the plans and specifications.

There is still one other fatal defect in defendant's case. There was no regular meeting of the Board of Education on May 24, 1940. Neither was there a special meeting.

**Section 4751 GC** provides as follows:

"SPECIAL MEETING OF THE BOARD:

A special meeting of a board of education may be called by the president or clerk thereof or by any two members, by serving a written notice of the time and place of such meeting upon each

member of the board, either personally or at his residence or usual place of business. Such notice must be signed by the official or members calling the meeting."

Clearly, a telephone call to the members of the Board by the P. W. A. resident engineer does not comply with the statutory re- quirements for a special meeting. Therefore, there was neither a regular nor a special meeting of the Board held on May 24, 1940. Accordingly, no resolution was presented to the Board and none was passed. While the certificate of May 24, 1940, remained in the custody of the clerk, it was not entered on the minutes of the board and there is no reference at any place in the minutes to this certificate.

A formal resolution was passed by the Board on March 7, 1942, accepting the building as of July 10, 1941, and this resolution was duly entered on the minutes of the Board. This is the only reference to an acceptance to be found anywhere in the Board's minutes.

Mr. Elmer, the Clerk, was asked by defendant's counsel on cross-examination, as to the acceptance on March 7, 1942, "why do you now testify that it was not accepted until a few days ago this year?" Mr. Elmer answered as follows:

"Because we didn't have an opportunity to accept it before. The work was not completed and we could not be expected to accept something which had not been completed."

It is the opinion of the majority of this court that the accept- ance referred to in §2365-3 GC from which the ninety days for the filing of a statement by a sub-contractor is to run, is an acceptance which would be entered on the minutes of the Board so that any sub-contractor examining the minutes would be apprised of the ac- ceptance and of the time remaining to him to file the required statement with the Surety to secure the benefits of the bond.

There is an excellent statement on the question involved in this case, by the supreme court speaking through Chief Justice Marshall in **Southern Surety Company v Schmitt, 117 Oh St 28.** The court, referring to §2365-3 GC, said on **page 38** of its opinion:

"It must be borne in mind in this connection that the statute uses the word 'acceptance.' It does not refer to partial acceptance or acceptance of a part of the work; it does not define the word 'acceptance'; there is nothing in the statute to indicate that use and occupancy of the improvement constitute an acceptance. There is nothing to indicate that substantial acceptance or something tan- tamount to acceptance would be sufficient. The contract in this case was a lump-sum contract and an entire contract. The liability

of the contractor, and therefore the liability of the surety upon the bond of the contractor, did not cease until complete performance."

And also on page 40 of the opinion:

"The conclusion is irresistible that the 'acceptance' under the Ohio statute must be an administrative determination of the actual completion of the work in accordance with the terms of the contract, and in compliance with the plans and specifications and that this must be fixed by public record and readily ascertained."

In this statement the Ohio Supreme Court followed the opinion of Mr. Chief Justice Hughes of the United States Supreme Court in the case of Illinois Surety Company v United States, 240 U. S. 214. In that case Chief Justice Hughes, referring to a similar federal statute, said:

"It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time fixed by a public record, and readily ascertained."

It is the opinion of the majority of this court that the certificate of May 24, 1940, was not such a certificate as is mentioned in §2365-3 GC, because, (1st) it was not, at least as to the two unfinished contracts, an "administrative determination of the actual completion of the work in accordance with the terms of the contract and in compliance with the plans and specifications," and (2nd) the certificate was not "fixed by public record and readily ascertained."

It is our opinion that this case should be reversed and, inasmuch as the entire record consists of the evidence of only a single witness, and the exhibits, a final judgment should be entered for the plaintiff for the amount prayed for in its petition.

SKEEL, J., concurs.
LIEGHLEY, PJ., dissents.